THEODORE DAVIS ET AL., APPELLANTS, V. ADAM MOHR, TRUSTEE, ET AL., APPELLEES.

275 N. W. 865

FILED NOVEMBER 5, 1937. No. 30082.

*Joseph E. Strawn* and *S. L. Winters*, for appellants.

*William R. Patrick, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, DAY, PAINE, CARTER and MESSMORE, JJ.

PAINE, J.

Plaintiffs filed an action in equity to quiet title to certain tracts of land and accretions thereto along the north side of the Platte river in Sarpy county, and to enjoin the defendants from trespassing upon the same, or erecting barriers thereon.

The defendants first filed an answer in the nature of a general denial, and later filed an amended answer with

cross-petition, praying for a judgment quieting title to certain land in defendants, to which a reply was filed. A decree was entered, dismissing plaintiffs' petition, and granting defendants relief as prayed, from which plaintiffs appeal.

The plaintiffs are Theodore Davis and his son-in-law, Henry F. Schulz. The defendants consist of nine individuals and the Clarke Land & Loan Company, a corporation.

The land which is in controversy in this case is located in sections 26 and 27, township 13 north, range 12 east of the 6th principal meridian in Sarpy county, Nebraska, and is more particularly described as government lots 3 and 4, together with a large island, called by the plaintiffs the Davis & Schulz island, of approximately 34 acres, lying just to the south of these tracts across a small branch of the Platte river, and which constitutes the north side of the Platte river, together with certain accretions thereto. Lot 3 lies to the east of each of said lots lying along the north bank of said river. The defendants disclaimed any interest in government lot 3. Government lot 4 is the only shoreland which is in controversy, and the abstract shows that the record title to this government lot 4 is incomplete.

The plaintiffs claim the ownership of all of the Davis & Schulz island, alleging that it was formed by accretions added to a small portion of government lot No. 3 which was cut off from the mainland by the Platte river; that this portion so cut off is the eastern end of the island.

On the other hand, the defendants claim in their cross-petition that for more than ten years they have been in adverse possession of government lots 4 and 5, claiming to own and hold the same adversely to all other persons; that these lots are riparian in character, and that they are, therefore, the owners of such portion of said island as is situated south of their lands.

At the east end of the Davis & Schulz island there are a number of large trees, and the plaintiffs contend that the island was formed by an accretion from the east

end to the west end, starting from a little island where the large trees are growing, which island was cut off from government lot No. 3 on the mainland which they own, and plaintiffs insist that all of this island is formed from such accreted land, as there was no island there when the government survey was made in 1856. In the trial this tip at the east end of the island on which the large trees are growing was designated a towhead.

On the other hand, the defendants insist, and their evidence supported their claim, that this towhead was originally a part of an island called Zwiebel island, lying to the east, which island is covered with large trees of the identical character and general size with the trees on this towhead, which trees differ from the trees on the mainland, and from the smaller trees at the west end of the Davis & Schulz island. Defendants insist that in 1910 there was an ice gorge which resulted in the water cutting off the towhead from Zwiebel island, and it has remained cut off ever since, and that it was never a part of the mainland, or attached to lot No. 3.

The defendants ridicule the claim of the plaintiffs that this island of 34 acres, and reaching nearly three-quarters of a mile upstream, accreted from this towhead at its east end, and insist that islands are never formed upstream in a current, but that they are always formed from a towhead downstream, but the plaintiffs as strenuously insist that it was so formed in this case. The evidence of defendants rests in part upon the testimony of a surveyor, who testified that he had been acquainted with this situation for more than 40 years, and that he was there when this towhead was cut off from Zwiebel island. Defendants insist that up to 1924 there was just open water to the west of the towhead, and also claim that neither of the plaintiffs has ever paid any taxes whatever on any of this Davis & Schulz island.

A large number of photographs, maps, charts, and a photostatic copy of letters patent issued by the general land office, and an abstract appear in this large bill of excep-

tions, some of the photographs having been taken many years ago, and the plaintiffs insist that the proof shows that there has always been a channel between the towhead and Zwiebel island, and that they were never connected. Plaintiffs insist that they have been in possession of this island ever since it was formed, and that the title of the defendants is attempted to be shown through leases which have been given to a hunting club from a number of different people. The plaintiffs insist that some of the defendants' witnesses are honestly mistaken, and have confused in their evidence the situation in regard to Davis & Schulz island with an island farther west.

The defendants charge that plaintiffs have never paid any taxes on the land they are claiming, and that when John W. ·Davis died in 1917, in the inventory filed with his estate, which is found in the bill of exceptions, no reference is made to this so-called Davis & Schulz island as one of his possessions, and defendants claim that that is because it had no existence at that time, and that Davis had never claimed any part of the island which was in existence, but had simply pastured cattle there at times.

A number of witnesses were called to support the allegations as to open, nortorious and continuous possession by each of the parties, and the evidence is most confusing. Various leases were given from time to time to the members of the Papillion Gun Club, and these members testify that some of them occupied the shack owned by the club every two or three days during many years, and that there was no interference with their peaceable possession; that this house or shack was completely furnished for comfortable living, and provided with a good well, and that many guests were entertained there, including Boy Scouts, and that to enjoy hunting and fishing it was necessary to have control of the river to the center of the main channel to exclude undesirables; that at times the plaintiff Davis had been invited to eat with them, and that the relations seemed to be friendly, but the plain-

tiffs had claimed the right to, and testify they did, pasture the island.

With this evidence of adverse possession down through all these years, sharply in conflict, the trial judge, who saw and heard the witnesses, then, accompanied by opposing counsel and the clients, went out and examined the islands and trees and the riparian land in controversy, with the bayous and channels separating them, and by examination on the spot, reached a decision as to the facts. He then took the case under advisement, had briefs submitted on the law, and then entered a decree, finding that the petition of the plaintiffs should be dismissed, and that the defendants, as riparian owners of government lots 4 and 5, were the owners of that portion of the Davis & Schulz island lying within the east and west boundary lines when such government boundary lines were extended south across the island, and finding that, under the same rule of riparian rights, the plaintiffs owned the easterly portion of the island which would be cut off by an extension to the south of the west line of their government lot 3.

In a case involving the erratic action of channels of the Platte river during the spring floods and the ice gorges of winter, as well as the examination of the character and size of the trees growing upon adjacent islands, as well as upon the mainland, a trial judge who heard the same evidence which we had before us, and who made a careful examination of all these facts on the ground, is in a very advantageous position to determine the facts in a case of this nature. There is very little dispute in this case as to the law of Nebraska relating to adverse possession, riparian rights, and accretions, and we see no necessity for discussing the many cases cited upon these points.

The record has been carefully examined, and it is held to sustain the findings and judgment of the trial court.

AFFIRMED.